

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA

Stephen Wilson
_____

3452089
_____

_____          _____

_____          _____

_____          _____

*(Enter above the full name of the plaintiff*          *(Inmate Reg. # of each Plaintiff)*
*or plaintiffs in this action).*

**VERSUS**                    **CIVIL ACTION NO.**   2:19-cv-00103
                                                     _____
                              *(Number to be assigned by Court)*

Jonathan Frame ; Richard Toney ;          Jury by trial demanded

Andrew Hill ; Ryan Hill ; Mike Buzzard ;

Scott Smith ; two (2) as-yet unidentified

SRT team officers ; Sued in their individual capacities
*(Enter above the full name of the defendant*
*or defendants in this action)*

## **COMPLAINT**

**I.      Previous Lawsuits**

      **A.**     Have you begun other lawsuits in state or federal court dealing with the same
               facts involved in this action or otherwise relating to your imprisonment?

                       Yes  ✓        No  _____

1

B.   If your answer to A is yes, describe each lawsuit in the space below.  (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same outline).

1.   Parties to this previous lawsuit:

Plaintiffs:   Stephen Wilson 3452099

Defendants:   Lyle Lesher

Christopher Hess

Charles Legg

2.   Court (if federal court, name the district: if state court, name the county):

Southern District of West Virginia

3.   Docket Number:   2:14-cv-23764

4.   Name of judge to whom case was assigned:

Dwayne Tinsley

5.   Disposition (for example: Was the case dismissed?  Was it appealed?  Is it still pending?

Dismissed: Failure to exhaust Admin. remedies

6.   Approximate date of filing lawsuit:   June 2014

7.   Approximate date of disposition:   Feb 2018

2

II.   **Place of Present Confinement:** Mount Olive Correctional Complex

    A.    Is there a prisoner grievance procedure in this institution?

                Yes ✓          No _____

    B.    Did you present the facts relating to your complaint in the state prisoner grievance procedure?

                Yes ✓          No _____

    C.    If your answer is YES:

          1.    What steps did you take? I filed to the Unit Manager, then appealed to the Warden, followed by the Commissioner

          2.    What was the result? Refused to provide the reliefs sought in my grievances

    D.    If your answer is NO, explain why not: _____ N/A

III.   **Parties**

(In item A below, place your name and inmate registration number in the first blank and place your present address in the second blank. Do the same for additional plaintiffs, if any.)

    A.    Name of Plaintiff: Stephen Caleb Wilson # 3452089

          Address: One Mountainside Way, Mt. Olive, WV 25185

    B.    Additional Plaintiff(s) and Address(es): _____

          N/A

(In item C below, place the full name of the defendant in the first blank, his/her
official position in the second blank, and his/her place of employment in the third
blank. Use item D for the names, positions, and places of employment of any
additional defendants.)

C.    Defendant: Jonathan Frame

       is employed as: Associate Warden of Security

       at Mount Olive Correctional Complex

D.    Additional defendants: Richard Toney, Capt. / SRT instructor at Mount
Olive; Andrew Hill, Lt. at Mount Olive; Ryan Hill, Sgt. at Nothern
Correctional Facility; Scott Smith, C/o at Huttonsville Correctional Complex;
Mike Buzzard, C/o at Huttonsville, two (2) unidentified SRT Officers

## IV.   Statement of Claim

State here as briefly as possible the <u>facts</u> of your case.  Describe how each defendant
is involved.  Include also the names of other persons involved, dates, and places.  Do
not give any legal arguments or cite any cases or statutes.  If you intend to allege a
number of related claims, set forth each claim in a separate paragraph.  (Use as much
space as you need.  Attach extra sheets if necessary.)

- See Attached -

# Statement of Claim

1. On or about March 26th, 2018, water to Plaintiff's cell was shut off at approx. 7AM. Defendant Toney denied Plaintiff and other inmates water until approx. 6 PM.

2. On or about March 26th, 2018, members of a multi-facility Special Response Team (heretoforth SRT) entered Quilliams II, Pod 4 at approx. 11:30 AM for a surprise search of the unit/cells.

3. Along with approx. twenty (20) unknown SRT members, Defendants Toney, Andrew Hill (henceforth A. Hill), Ryan Hill (Henceforth R. Hill), Smith, Buzzard, and the as-yet two (2) unidentified SRT members were present.

4. When the SRT entered Pod 4, several inmates housed upon the top tier began yelling to each other, making fun of the SRT. (Note that Plaintiff is housed upon the bottom tier)

5. While removing inmates from their top tier cells, several SRT members began yelling at the inmates in irritation, then forcefully removed inmates from the pod for talking, including Steven Branscome and Frank Overbaugh. (Appendix A, B)

6. After completing cell searches of the top tier, the SRT began on the bottom tier, where Plaintiff was housed.

7. Two unknown SRT members then came to cell #404, which housed Plaintiff, and after stripping Plaintiff without incident, handcuffed

Plaintiff behind his back and placed shackles around his ankles. Said SRT members failed to double-lock the restraints upon Plaintiff's wrists and ankles, which would have prevented them from tightening. Plaintiff was then secured to a metal table within the pod without incident.

8. Soon thereafter, Defendants Buzzard and R. Hill proceeded into an argument with the inmate who was housed in Cell #401, Charles Lively. Without cause nor warning, Defendant Buzzard sprayed inmate Lively with chemical agents, immediately after which Defendant R. Hill shot inmate Lively two (2) times with a 40mm tactical weapon.

9. At this time, Defendant Torey began yelling at the various SRT members to get us out of the pod.

10. At this time, the two (2) as-yet identified Defendants named upon Plaintiff's complaint began un-securing him at the table, at which they were having trouble. It was at this time that Plaintiff's left cuff became painfully tightened over his wrist. When he mentioned this to the two (2) unidentified defendants, they promised to loosen Plaintiff's cuff outside.

11. The two (2) unidentified Defendants then escort Plaintiff out of the pod and onto the outdoor recreation yard, where he is led to an one-man security cage. Before the two (2) unidentified Defendants can relieve Plaintiff of his cuff, Defendants Smith and Buzzard are heard telling other SRT members to "leave their restraints on". The two (2) unidentified Defendants then place Plaintiff into his cage

without relief, explaining that the choice was "up to the captain."
Defendant Toney was the 'captain' in reference.

12. Plaintiff then overhears another inmate, Larry Cantrell, call to
Defendants Toney and Hill, who were present. Inmate Cantrell
asks that his restraints be loosened and/or removed, complaining of
the severity to which they were tightened. Plaintiff then calls out
the need for his restraints to be loosened, as do several other
inmates. (Appex Appendix' C, D)

13. Defendants Toney and Hill refuse, stating that it wasn't up to them
and that it was "Frame's call." At this time, all SRT members and
staff exit the recreational yard. Plaintiff is left in full restraints, in
pain, locked within a single-man security cage with relief or
supervision, as are approx. seven (7) other inmates.

14. At or around the time Plaintiff was locked upon the recreation yard on
March 26th, the temperature outside was approx. 40° according to
the weather channel. Plaintiff, who had been allowed only a shirt, pants,
boxers, sox and shoes, did quickly began to receive a chill in the outdoor
cage he was placed in.

15. Approx. twenty (20) to thirty (30) minutes after being placed upon the
recreation yard, several unidentified SRT members return and began taunting
Plaintiff and other inmates about being outside in the cold (Appendix' A, B,
C, D). At this time Plaintiff and other inmates inform SRT members of the
sever tightness of their restraints. Plaintiff complains of the growing
numbness in his left hand. Other inmates express concern over the

temperature. Unidentified SRT members continue their taunting until they leave.

16. After approx. another hour has elapsed, Plaintiff's hand is numb, as are the appendages of several other inmates according to them. One inmate, Larry Cantrell, has to urinate. Plaintiff and the other inmates begin to yell, yet no one comes to check upon them. Without a choice, Larry Cantrell is forced to urinate upon himself.

17. Approx. forty-five (45) minutes to an hour later, inmate Larry Cantrell contorts himself until he can reach the phone, at which time he calls his mother with a desperate plea for help.

18. Finally, after over two (2) hours, SRT members return to the recreation yard and remove Plaintiff, as well as other inmates, replacing them within their cells.

19. Upon seeing his hand, Plaintiff notes swelling and bruising about his wrist and hand. Hoping it is only temporary, Plaintiff waits until approx. 7:30 PM when, in severe pain and with the swelling in his left hand remaining, he shows Correctional Officer II Stover his injuries.

20. Upon seeing the extent of Plaintiff's injuries, CO II Stover immediately takes pictures, files a report, and calls for medical attention. An ice pack and Ibeprofin were provided, as well as a sick call slip.

21. On or about March 27th, 2018, Plaintiff did turn in a sick call detailing

his injury, pain, and swelling. Between the dates of March 27th, 2018, and June 27th, 2018, Plaintiff did file not less than six (6) sick-call slips concerning the injury and pain of his hand.

22. On or about March 27th, 2018, Plaintiff filed a grievance to the unit manager detailing the events stated herewithin, in full accordance with Mt. Olive and West Virginia Department Of Corrections policy. Said grievance was returned to Plaintiff sanz any granting of relief.

Said grievance (18-MOC-Q2-250) was immediately appealed to the warden of Mt. Olive in accordance with Mt. Olive and West Virginia Department Of Corrections policy. Said grievance was then returned from the warden's office 'Accepted', but without any relief being granted.

Said grievance was then immediately appealed to the Commissioner of the West Virginia Department Of Corrections in accordance with Mt. Olive and West Virginia Department Of Corrections policy. Again, said grievance was 'accepted', yet all relief was denied.

23. On or about May 3rd, 2018, Plaintiff did receive via signed-and-sealed legal mail grievance No. 18-MOC-Q2-250 back from the commissioner's office. At this time and in accordance with Mt Olive, West Virginia Department Of Corrections, and the Federal Prisoner Litigation Reform Act policy, Plaintiff has exhausted his administrative remedies.

24. Between the dates of March 26th, 2018, and July 17th, 2018,

Plaintiff was given not less than four (4) medical prescriptions for the injury/pain in his hand, which persist to this day.

25. To date, Plaintiff has lost feeling in the tips and pads of his left-hand thumb, index finger, and middle ~~finger~~ finger due to the events stated herewithin. Plaintiff has had X-rays taken and blood drawn, and has been taken to numerous nurse sick-call visits, as well as three (3) appointments with the facility doctor for the injury sustained during the events described herewithin.

26. At no time during the events described herewithin was there ever any cause, nor did Plaintiff ever give any cause, for the multitude of abuses described herewithin.

27. As well as having to live and deal with constant pain within his ~~his~~ left hand and the loss of feeling within three of his fingers, Plaintiff suffers both emotional and psychologic abuses from the allegations described herewithin, including a high level of anxiety anytime he is placed within physical restraints.

28. At no time during the events described herewithin was Plaintiff a danger to himself, others, or any property, thusly the extent of- and extended use of physical restraints once placed within a single man security cage were intended and used as a punishment and with the purpose of causing pain and suffering.

29. At all times relevant, all Defendants were either employed by- or working at the Mount Olive Correctional Complex.

30. At all times relevant, all Defendants acted under color of state law.

31. All Defendants acted wantonly, willfully, maliciously, and with intent.

I declare under penalty of perjury that the foregoing is true and correct.

Stephen Wilson

Stephen Wilson

MOCC # 3452089

One Mountainside Way

Mt. Olive, WV 25185

## Causes of Action

## Count One

Plaintiff was subjected to Cruel and Unusual punishment in violation of the eighth amendment of the Constitution. Plaintiff incorporates his 'Statement of Claim' as though stated fully herein.

32. Defendant Frame violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment by being grossly negligent in the training, supervision, and control of his subordinates, leading to the constitutional violation.

33. Defendants Frame and Toney violated Plaintiff's Eight Amendment right to be free from cruel and unusual punishment by being grossly negligent in managing subordinates who caused the constitutional violation

34. Defendant Toney violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment by ordering subordinates to turn off Plaintiff's water and, then, to leave Plaintiff in manual restraints while locked within a single-man security cage outside in 40° weather without proper clothing or medical attention for over two (2) hours.

35. Defendants A. Hill, B. Hill, Buzzard, Smith and the two (2) unidentified SRT members violated Plaintiff's Eighth Amendment right to be free of cruel and unusual punishment by failing to intervene for the entirety of the time Plaintiff suffered within restraints, outside in the cold even after being made aware of the Plaintiff's risk of - and ensuing injuries, and by denying him any water to drink.

## Count Two

Plaintiff was denied due process under the Fourteenth Amendment of the Constitution. Plaintiff incorporates paragraphs 1 through 35 as though stated herewithin.

36. Defendant Frame violated Plaintiff's Fourteenth Amendment right to due process by being grossly negligent in the training, supervision, and control of his subordinates, leading to the constitutional violation.

37. Defendants Frame and Toney violated Plaintiff's Fourteenth Amendment right to due process by being grossly negligent in managing subordinates who caused the constitutional violation.

38. Defendant Toney violated Plaintiff's Fourteenth Amendment right to due process by ordering subordinates to leave Plaintiff in full mechanical restraints while locked inside a single-man security cage outside in 40° weather without proper clothing, water, or medical attention for over two (2) hours.

39. Defendants A. Hill, R. Hill, Buzzard, Smith, and the two (2) unidentified SRT members violated Plaintiff's Fourteenth Amendment right to due process by failing to intervene for the entirety of the time Plaintiff suffered within mechanical restraints, outside in the cold, without water, even after being made aware of Plaintiff's risk of- and ensuing injuries.

Appendix A

## Official Affidavit For Frank Overbaugh

March 26, 2018 we had a shakedown on pod 4 of Quilliams II. During this shakedown I was very aggressively removed from the pod and put into a rec. cage on the recreation yard. I was left in this cage with my hands cuffed behind my back and shackles around my ankles for almost an hour when officers began bringing other people out and locking them in cages. I kept asking to have my hands cuffed in front but they told me no. Other people asked for the same thing and were also told no. Some other people told the officers the cuffs were too tight but they got told no too.

A little while after the officers left, others came to the rec. yard and began taunting us, asking if we were warm enough, and if we were enjoying ourselves. I tried asking them if they would put my hands in front of me but they said no. They also refused other people even though we were telling them that we were in pain. After they left, it was over another hour before any officer returned to take us inside. They also refused to help us until we were back in our cells they said.

I do swear against the penalty of perjury that the above stated facts are true and correct.

F Overbaugh
Frank Overbaugh / 3484994
MOCC
ONE MOUNTAINSIDE WAY
MT. OLIVE, WV   25185

# My Affidavit for March 26, 2018

These events occurred on March 26, 2018

During a shakedown of my pod (QTI, pod 4) I was escorted outside to the recreation yard and placed within one of the recreation cages between the hours of 11 AM and 12 p.m. I was in full restraints, including shackled about the feet and with my hands cuffed behind my back. At no time were these restraints ever removed.

Approximately an hour after being locked inside the cage the correctional officers and SRT members began bringing more people outside, and locking them in the cages. I immediately began complaining of the pain in my shoulders from being cuffed behind my back for so long, and requested that the cuffs be removed or else moved in front of me. Inmates Stephen Wilson and Larry Cantrell also requested the loosening of their cuffs, as they complained it was cutting off the circulation in their hand(s). They were also refused and the correctional officers and SRT officers then left the recreational yard entirely.

Approximately 20 minutes later, several officers returned and again requests were made to remove/change/loosen the cuffs. All request were denied, and the officers then began taunting us by asking if we were "having fun yet." Those officers then left.

It was approximately one to two hours later before any officers returned to the rec. yard, by which time I was in serious pain and both inmates Wilson and Cantrell were complaining that they could no longer feel their hands. We were then returned to our cells.

∴ I hereby swear that the above stated record is true and correct under the penalty of perjury of law.   Steven Branscome #3533909

Steven BRANSCOME #3533909

Appendix C

One of Two

# Affidavit of Quantel Saunders 3552727  3/27/18

During a shake down on Q2-pod 4 on 3/26/18 several inmates were joking around which made the S.R.T. (special Response Team) members mad, and after another inmate was sprayed with "Phantom" an shot with the 40mm. the entire pod was taken to the Rec. cages on Q1 an Q2. I was personally on Q2 rec yard and the Co's refused to take our handcuffs off, which were tight & behind our backs, and kept our shackles on. I then heard inmate Larry Cantrell ask the Captain, that the SRT instructor, if he could please take off his cuffs because they were to tight and hurting his wrist. Which as ask the same thing because it was hurting my shoulder really bad. The Captain said "Tough luck, its not up to me ask Frame." At that time all the Co's left us outside in the cold still cuffed an locked in single man cages about 20 min. later about 10 SRT members came out side. One of them said "hows the air does it feel good? Nice and cool huh?" Another Co said "Are you still having fun? Why aren't you guys laughing now? At which time everyone told them that they were cold and wanted to

Appendix C

go inside. Inmate Contrell again said he couldn't feel his hand and his cuffs were hurting his wrist. The Co's laughed, then walked inside. After about an hour inmate Contrell started yelling for the CO's saying he had to urinate an everyone else was yelling also for about 10-20 minutes but no one came to help us. We were all outside for over 2 hours cuffed behind our backs in little clothing t no jackets, because 2 or 3 inmates made the SRT team mad. There should not be group punishment in prison.

I hereby Swear under penalty of perjury of the law that this document is true and correct to the best of my Knowledge

3/27/18

Quantel Saunders
1 mountainside way
Mt Olive, WV 25185

1 of 2   Affidavit of Larry Cantrell   on 3/27/18

On 3/26/18, during a shakedown by the S.R.T. (Special Response Team) on Q2 pod 4, several inmates were joking around and made the officers upset. While myself and others on the lower tier were handcuffed behind our backs very tight and in shackles chained to the pod tables, the inmate in cell 401 asked to speak to the Captain. A S.R.T. member sprayed him with chemical agents and another one shot him with a tactical weapon. I guess that was the last straw, because we were all unchained from the tables and placed in the Q2 rec cages and the top tier was placed in the Q1 rec cages. These are individual cages with locks that prevent human contact. We were placed in the cages with handcuffs behind our back and shackles on even though all of us were asking to be uncuffed because they were so tight and not double-locked. The Captain (S.R.T. instructor) says, "Not my call, ask Frame." at which time they all leave us out in the cold wearing what little clothing we had on and no jackets.

Approximately 20-30 min. later about 10 S.R.T. members come outside. One officer asks, "How's the weather? Airs a little cold huh?" and then another immediately says, "Why's nobody laughing now? Are you not having fun anymore?" At which time several of us told them our wrists and shoulders hurt and we were cold. None of the S.R.T. members

Appendix D

2 of 2

said anything and just left us out there.
After about an hour we all started yelling for
the C.O.'s to come help us please and a few
guys were yelling that the had to urinate,
but no one answered our pleas or care
to help us. Finally after over two hours
total the S.R.T. come and got us like
nothing even happened. All of this because
a few inmates upset the S.R.T. members.

I swear that this Document is
true and correct under penalty of perjury
of law to the best of my Knowledge.


(Date)    3/27/18          (Sign) _____
                     (Print Name)(#)  Larry Cantrell #3468989
                     (Address)   M.O.C.C.
                          1 mountainside way
                          Mt. Olive, WV 25185

IV.     **Statement of Claim (continued):**

*— See Attached —*

V.     **Relief**

State briefly exactly what you want the court to do for you.  Make no legal arguments. Cite no cases or statutes.

A) Declare the acts and ommissions described herewithin did violate Plaintiff's rights under the Constitution and the laws of the United States;

B) Order Defendants to pay compensatory and punitive damages;

C) Order Defendants to pay/repay any and all attorney fees Plaintiff may incur; and

5

V.     **Relief (continued):**

D) Grant other just and equitable relief this Honorable Court
deems necessary

VII.   **Counsel**

A.     If someone other than a lawyer is assisting you in preparing this case, state the
       person's name:

       N/A

B.     Have you made any effort to contact a private lawyer to determine if he or she
       would represent you in this civil action?

       Yes ✓            No _____

       If so, state the name(s) and address(es) of each lawyer contacted:

Paul Stroebel ; Stroebel and Johnson , 405 Capital St., Charleston,
WV 25329

       If not, state your reasons: _____ N/A _____

C.     Have you previously had a lawyer representing you in a civil action in this
       court?

       Yes _____        No ✓

6

If so, state the lawyer's name and address:

_____ N/A _____

_____

Signed this ___5___ day of ___Febuary_____, 20_19___ .

_____

_____

_____

_____
Signature of Plaintiff or Plaintiffs

I declare under penalty of perjury that the foregoing is true and correct.

Executed on __5 Febuary 2019_____ .
                (Date)

_____
Signature of Movant/Plaintiff

_____ N/A _____
Signature of Attorney
(if any)

7