**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

STEPHEN WILSON,

                Plaintiff,

v.                                     CIVIL ACTION NO.  2:19-cv-00103

JONATHAN FRAME; RICHARD TONEY;
ANDREW HILL; RYAN HILL; MIKE
BUZZARD; SCOTT SMITH; and TWO
UNIDENTIFIED SRT TEAM OFFICERS,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendants Jonathan Frame, Richard Toney, Andrew Hill, Ryan Hill, Scott Smith, and Mike Buzzard's Motion to Dismiss.  (ECF No. 26.)  For the reasons discussed more fully below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion.

### I.  BACKGROUND

This 42 U.S.C. § 1983 action arises out of an alleged incident where Defendants Jonathon Frame ("Frame"), Richard Toney ("Toney"), Andrew Hill ("A. Hill"), Ryan Hill ("R. Hill"), Scott Smith ("Smith"), Mike Buzzard ("Buzzard"), and two unidentified correctional officers injured Plaintiff Stephen Wilson ("Plaintiff"), an inmate at Mount Olive Correctional Complex, without justification during a cell search.

At approximately 7:00 a.m. on the morning of March 26, 2018, Plaintiff alleges that the water in his cell was shut off and remained off until approximately 6:00 p.m. (ECF No. 32 at 2–3, ¶ 9.) Around 11:30 a.m. that same morning, members of the Special Response Team ("SRT"), as well as Defendants Toney, A. Hill, R. Hill, Smith, and Buzzard, entered Plaintiff's pod to conduct a surprise search of the cells. (*Id.*) While Plaintiff's cell was being searched, he was stripped without incident and alleges that two unidentified SRT members handcuffed him behind his back, shackled his ankles, and secured him to a metal table but "failed to double-lock the restraints upon Plaintiff's wrists and ankles, which would have prevented them from tightening." (*Id.* at 3, ¶ 11.)

During the search of a neighboring cell, Defendants Buzzard and R. Hill became engaged in a confrontation with another inmate who was sprayed with chemical agents and shot twice with a tactical weapon. (*Id.* ¶ 12.) As a result of this incident, Defendant Toney instructed SRT members to remove inmates from the pods. (*Id.* ¶ 13.) While he was being moved, Plaintiff alleges the two unidentified SRT members had trouble detaching him from the table, which caused his left cuff to become "painfully tightened over his wrist." (*Id.* ¶ 13.) Plaintiff further alleges that he mentioned this to the unidentified officers, who promised to loosen the cuffs once he was outside. (*Id.*) Plaintiff was escorted out of the pod and into the outdoor recreation yard, where he was placed in a one-man security cage. (*Id.* at 4, ¶ 14.)

However, once outside, Plaintiff claims Defendants Buzzard and Smith told the SRT members to leave the inmates restraints on, and he was left in the cage without relief. (*Id.*) Plaintiff alleges the unidentified SRT officers told him the choice was "up to the captain," Defendant Toney. (*Id.*) When he and other inmates asked for their restraints to be loosened, Plaintiff alleges

Defendants Toney and Hill[1] refused and stated that it was not their decision but was instead "Frame's call." (*Id.* ¶ 15.) After this interaction, Plaintiff asserts all SRT Members and correctional officers left the yard and left Plaintiff, fully restrained and in pain, outside with seven other inmates, all in their own security cages. (*Id.* ¶ 16.)

During this time, Plaintiff alleges the temperature outside was approximately 40 degrees, and he "had been allowed only a shirt, pants, boxers, socks and shoes[.]" (*Id.* ¶ 17.) After approximately twenty to thirty minutes, unidentified SRT members returned to the yard and taunted Plaintiff and the other inmates about the cold temperature. (*Id.* ¶ 18.) At this time, Plaintiff alleges he, as well as the other inmates, again informed SRT members of the "severe tightness" of his restraints as well as the increasing pain and numbness in Plaintiff's own left hand. (*Id.* at 4–5, ¶ 18.) Plaintiff alleges the unidentified SRT members only continued their taunting and then left the yard. (*Id.*) Plaintiff states that he and the other inmates were left in these conditions for more than two hours. (*Id.*) As a result of this incident, Plaintiff claims he sustained visible injuries and experienced pain and numbness in his left hand that persists today. (*Id.* ¶ 19.)

On August 23, 2019, Defendants filed the pending Motion to Dismiss. (ECF No. 26.) Plaintiff responded, (ECF No. 30), and Defendants timely replied, (ECF No. 31). As such, this motion is fully briefed and ripe for adjudication.

## II.    *LEGAL STANDARD*

A motion to dismiss for failure to state a claim upon which relief may be granted tests the legal sufficiency of a civil complaint. Fed. R. Civ. P. 12(b)(6). A plaintiff must allege sufficient facts, which, if proven, would entitle him to relief under a cognizable legal claim. *Bell Atl. Corp.*

---

[1] It is unclear whether Plaintiff refers to Defendant R. Hill or A. Hill.

*v. Twombly*, 550 U.S. 544, 554–55 (2007). A case should be dismissed if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. In applying this standard, a court must utilize a two-pronged approach. First, it must separate the legal conclusions in the complaint from the factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Second, assuming the truth of only the factual allegations, the court must determine whether the plaintiff's complaint permits a reasonable inference that "the defendant is liable for the misconduct alleged." *Id.* Well-pleaded factual allegations are required; labels, conclusions, and a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) ("Bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." (quoting *Iqbal*, 556 U.S. at 679)). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," thereby "nudg[ing] [the] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570.

## III.    DISCUSSION

Plaintiff's Amended Complaint alleges the following two causes of action: (1) deliberate indifferent under 42 U.S.C. § 1983 in violation of the Eighth Amendment to the United States Constitution and (2) excessive force under 42 U.S.C. § 1983 in violation of the Eighth Amendment to the United States Constitution. Defendants challenge Plaintiff's general claim of bystander liability and assert both failure to exhaust administrative remedies and qualified immunity as affirmative defenses. Each argument is addressed in turn.

4

*A. Conversion of Motion to Dismiss to Motion for Summary Judgment*

Plaintiff has attached multiple exhibits to his response in opposition. "Rule 12(b)(6) does not mandate that a district court treat a motion to dismiss as a motion for summary judgment simply because the moving party includes exhibits with its motion." *Pueschel v. United States*, 369 F.3d 345, 354 n.3 (4th Cir. 2004). It "only requires that a motion to dismiss be treated as a motion for summary judgment when the motion to dismiss or exhibits present matters outside the nonmoving party's pleadings and the district court does not exclude such matters." *Id.* Nevertheless, a court may consider extrinsic evidence at the 12(b)(6) stage if such evidence "was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity." *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (quoting *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)). "The rationale underlying this exception is that the primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated where plaintiff has actual notice . . . ." *Trigon Healthcare*, 367 F.3d at 234 (4th Cir. 2004) (internal quotations omitted).

Here, Plaintiff attaches the following four exhibits to his response: (1) Exhibit A is an excerpt from the Amended Complaint filed on the docket; (2) Exhibit B is the grievance which Defendants allege he failed to exhaust; (3) Exhibit C is a copy of a policy directive instituted by the West Virginia Division of Corrections ("WVDOC"); and (4) Exhibit D is an affidavit Plaintiff attached to his original complaint, which was filed *pro se*. The usual concerns are not present here because Plaintiff, not the Defendants, was the party who attached this extrinsic evidence. However, the Court considers only the grievance attached as Exhibit B, which Plaintiff explicitly referenced in his Amended Complaint. (*See* ECF No. 32 at 5, ¶¶ 19–23.) Further, no party disputes

the authenticity of this grievance.  Accordingly, given that the exhaustion issue turns on the indisputably authentic grievance attached as Plaintiff's Exhibit B, this Court may consider it without converting this to a motion for summary judgment.[2]

### B.  Exhaustion of Administrative Remedies

Defendants argue Plaintiff's Amended Complaint should be dismissed because Plaintiff has failed to exhaust his administrative remedies prior to filing suit.  (ECF No. 27 at 4.) Specifically, Defendants contend Plaintiff failed to do the following: (1) provide evidence of exhaustion; (2) timely appeal the decision made by the Warden; (3) grieve only one issue per grievance; (4) grieve all the claims he alleges; and (5) as raised for the first time in reply, grieve Defendants' names and provide Defendants notice of his claims.  Plaintiff has produced one grievance relating to this series of events.  (ECF No 30–2; ECF No. 44.)

As a state prisoner, Plaintiff is bound by the mandatory requirements of the Prison Litigation Reform Act ("PLRA") which prohibits incarcerated individuals from the commencement of a civil action regarding prison conditions and mistreatment without first exhausting all available administrative remedies.  *See* 42 U.S.C. 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative

---

[2] Further, this motion should not have been styled as a motion to dismiss under Rule 12(b)(6), but rather as a motion for judgment on the pleadings under Rule 12(c) because it implicates affirmative defenses.  *See Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) ("[I]n the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6). This principle only applies, however, if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint*.'").  However, there is no material difference between in the applicable legal standards.  *Burbach Broad. Co. of Delaware v. Elkins Radio Corp.*, 278 F.3d 401, 406 (4th Cir. 2002) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)).

remedies as are available are exhausted."). The United States Supreme Court has explicitly held "that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Block*, 549 U.S. 199, 216 (2007). However, a prisoner's complaint may be dismissed in the "rare case" where the prisoner's failure to exhaust is apparent from the face of the complaint. *Wilcox v. Brown*, 877 F.3d 161, 167 (4th Cir. 2017) (quoting *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 682 (4th Cir. 2005)). The Court is mindful that "exhaustion of administrative remedies under the PLRA is a question of law to be determined by the judge." *Creel v. Hudson*, No. 2:14-CV-10648, 2017 WL 4004579, at *3 (S.D. W. Va. Sept. 12, 2017) (quoting *Drippe v. Tobelinski*, 604 F.3d 778, 782 (3d Cir. 2010)).

Similarly, the West Virginia Prisoner Litigation Reform Act ("PLRA") requires an inmate to exhaust the agency's procedures before filing a civil action regarding an ordinary administrative remedy. W. Va. Code § 25-1A-2(c). An "ordinary administrative remedy" is defined as "a formal administrative process by which an inmate submits a grievance seeking redress or presenting concerns regarding any general or particular aspect of prison life which does not involve violence . . . An ordinary administrative remedy includes, but is not limited to, . . . staff treatment or some other alleged wrong." W. Va. Code § 25-1A-2(a). Exhaustion of an ordinary administrative remedy is satisfied upon a showing of the following:

> An ordinary administrative remedy is considered exhausted when the inmate's grievance complies with duly promulgated rules and regulations regarding inmate grievance procedures, has been accepted, fully appealed and has received a final decision from the Commissioner of Corrections or the Commissioner's designee, or the Executive Director of the Regional Jail Authority, or the Director's designee.

§ 25-1A-2(d).

The WVDOC ordinary inmate grievance procedures proceed as follows. First, an inmate may file a grievance using forms provided by the prison "within fifteen (15) days of any occurrence that would cause him/her to file a grievance." W. Va. Code R. § 90-9-4.1. Only one issue or complaint may be grieved per form, and the inmate must submit it to his or her unit manager. § 90-9-4.2, 90-9-4.3. The unit manager is required to ensure that an answer to the grievance is provided to the inmate within five days. § 90-9-4.5. Next, the inmate may appeal the unit manager's response "to the Warden/Administrator within five (5) days from delivery of the response to his/her grievance" using the same form submitted to the unit manager. § 90-9-5.1. "The Warden/Administrator shall respond to the appeal . . . within five (5) days." § 90-9-5.4. Finally, the inmate may appeal the warden's response "to the Commissioner of the Division of Corrections within five (5) days after he/she receives the Warden/Administrator's response . . . using the same form . . . ." § 90-9-6.1. *"Only one grievance per envelope shall be permitted . . . [S]ubmission of multiple grievances . . . shall be grounds for rejection of the entire mailing . . . ." Id.* (emphasis in original). "If a grievance has not been properly submitted through any level by an inmate, it shall be rejected. A rejected grievance does not exhaust the grievance process or that step of the process." § 90-9-6.4.

Claims that have not been administratively exhausted may be dismissed under the standard of Federal Rule of Civil Procedure 12(b)(6). *See, e.g.*, *Baker v. Hammons*, No. 2:15-CV-13849, 2016 WL 538481, at *2–3 (S.D. W. Va. Feb. 9, 2016) (granting the West Virginia Regional Jail and Correctional Facility Authority's motion to dismiss for failure to exhaust administrative remedies under 42 U.S.C. § 1997e(a) and W. Va. Code § 25-1A-2). "If a prisoner's complaint contains a mix of exhausted and unexhausted claims, the Court may not consider the unexhausted

claims." *Stohl v. E. Reg'l Jail*, No. 1:14CV109, 2015 WL 5304135, at *4 (N.D. W. Va. Sept. 8, 2015 (citing *Jones v. Bock*, 549 U.S. 199, 220–21 (2007)).

First, Defendants argue dismissal is appropriate because Plaintiff failed to provide evidence of exhaustion. (ECF No. 27 at 4.) This argument is easily dismissed. As stated above, the Supreme Court has explicitly held "that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. Further, despite this leniency, Plaintiff clearly and plainly pled exhaustion in his Amended Complaint. (ECF No. 32 at 5, ¶¶ 20–23 (pleading definitively that "plaintiff has exhausted his administrative remedies."))

Second, Defendants argue Plaintiff failed to timely appeal the Warden's decision and, as evidenced by the grievance itself, Plaintiff's claims are not plausible as required under *Twombly*. (ECF No. 31 at 4.) Plaintiff counters by arguing that the Amended Complaint "clearly and plainly" pled exhaustion and that this issue creates a question of fact that is not appropriate for consideration under 12(b)(6) pleading standards. (ECF No. 30 at 5–6.) Only in rare cases will the failure to exhaust be apparent from the face of the complaint. *Wilcox*, 877 F.3d at 167. "In a typical PLRA case, a defendant will have to present probative evidence—in the words of *Jones*, to "plead and prove"—that the prisoner has failed to exhaust available administrative remedies under § 1997e(a). *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014) (quoting *Jones*, 549 U.S. at 204). While the United States Supreme Court recognized that "the PLRA mandates early judicial screening of prisoner complaints," the Court cautioned against altering ordinary procedural practices to accomplish the PLRA's policy aims. *Jones*, 549 U.S. at 202, 214 ("[T]he PLRA's screening requirement does not—explicitly or implicitly—justify deviating from the usual procedural

practice beyond the departures specified by the PLRA itself.").

Here, Plaintiff filed his grievance on March 26, 2018, and it was stamped as received by the unit manager on March 28, 2018.  (ECF No. 30–2.)  The unit manager responded and handwrote in the date April 2.  Plaintiff appealed the decision to the Warden the same day.  The appeal was stamped as received by the Warden on April 4, 2018 and was subsequently denied on April 9, 2018.  Under the Inmate Grievance Procedures, Plaintiff was required to appeal the Warden's response to the Commissioner within five days of receiving the warden's response.  W. Va. Code. R. § 90-9-6.1.  Plaintiff initialed the line to appeal to the Commissioner but there was no line for the date, and none was provided.  The Commissioner stamped the form as received on April 23, 2018.

According to Defendants, the Warden's response date and the Commissioner's stamped received date "overcome Plaintiff's allegations that he immediately appealed the grievance and establish that while his claims might be possible, they are not plausible as required under *Twombly*." (ECF No. 31 at 4.)  This argument shows a lack of understanding of pleading standards. Defendants are not allowed to present challenges to Plaintiff's factual allegations under a 12(b) motion; Plaintiff's factual allegations are taken as *true* and viewed in the light most favorable to Plaintiff.  *Twombly*, 550 U.S. at 556.  Further, plausibility is determined by providing enough facts "to raise a reasonable expectation that discovery will reveal evidence" to support that claim.  *Id.* Further, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.*  Under 12(b)(6) pleading standards, the Court will take Plaintiff's factual allegation that "said Grievance was then immediately appealed to the commissioner" as true.  (ECF No. 32 at 5, ¶ 22.)  Thus, Plaintiff has

alleged sufficient factual allegations to proceed past the motion to dismiss stage.

Third, Defendants contend that Plaintiff violated grievance procedures by including more than one issue in his grievance. (ECF No. 27 at 6.) Specifically, Defendants claim Plaintiff's complaints regarding "failure to lock restraints, the tightening of restraints, and the failure to remove restraints while in security cages" constitutes multiple events. (*Id.* at 7.) However, when viewed logically, this argument is baseless. Defendants emphasize Plaintiff's individual factual allegations to make it appear as if these encompass multiple claims. It is clear from Defendants' own description that these statements all relate to restraints. Further, the improper application of these restraints is the injury that serves as the basis for this suit. (*See* ECF No. 32 at 6, ¶ 26 and ECF No. 44 at 1.) Plaintiff's description of Defendants' failure to lock restraints, tightening of restraints, and failure to remove restraints is simply the pleading of the series of events that encompass one issue. Defendants' argument is defeated by common sense.

Fourth, Defendants argue Plaintiff's grievance contains allegations relating solely to his restraints, but the Amended Complaint goes further and includes unexhausted claims that should not be considered. (ECF No. 27 at 7.) Specifically, Defendants ask that the following allegations not be considered by the Court: (1) Plaintiff's allegations regarding the water to his cell being shut off from approximately 7:00 a.m. to 6:00 p.m., (ECF No. 32 at 2, ¶ 9); (2) Plaintiff's allegations regarding being "left in the recreation cage for approximately two hours in 40 degree weather," (*Id.* at 4, ¶ 17); and (3) Plaintiff's allegations regarding being ridiculed. (*Id.* at 4,6, ¶¶ 17, 27).

"The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218. "[T]o satisfy

the exhaustion requirement, grievances generally need only be sufficient to 'alert[ ] the prison to the nature of the wrong for which redress is sought.'" *Wilcox v. Brown*, 877 F.3d 161, 170, n.4 (4th Cir. 2017) (citing *Strong v. Davis*, 297 F.3d 646, 650 (7th Cir. 2002)). "[O]nce a prison has received notice of, and an opportunity to correct, a problem, the prisoner has satisfied the purpose of the exhaustion requirement." *Id.*

The WVDOC procedures provide no guidelines relating to the level of specificity required in prisoner grievances. Thus, Plaintiff's grievance was only required to sufficiently provide the prison adequate notice and the opportunity to correct Plaintiff's alleged problem. Plaintiff was not required to grieve every fact surrounding the incident in question. The Court declines to allow Defendants to comb through the Amended Complaint, cherry picking which facts they believe can now be asserted. Plaintiff's grievance provided the prison sufficient notice to correct Plaintiff's alleged problem, as was required. These factual allegations may proceed.

Finally, raised for the first time in reply, Defendants argue Plaintiff's grievance failed to name any of the Defendants and, thus, failed to provide them notice of his claims. (ECF No. 31 at 5.) Again, Defendants' argument is contrary to an explicit ruling by the Supreme Court of the United States. An inmate's failure to identify by name during the grievance process each individual defendant he later sues in federal court does not mandate dismissal pursuant to § 1997e(a). *Jones*, 549 U.S. at 219 (stating "exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances."); *see also Short v. Greene*, 577 F. Supp. 2d 790, 798 (S.D. W. Va. 2008). Rather, "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 at 218; *Moore v.*

12

*Bennette*, 517 F.3d 717 (4th Cir. 2008) (holding that the plaintiff did not have to identify specific individuals in his grievances where such identification was not required by the prison's grievance procedures).

In *Moore*, the Fourth Circuit determined that a prisoner's failure to name specific individuals in a grievance did not preclude a later § 1983 suit because the prison's grievance system did not require the inmate to identify specific individuals in his grievances. 517 F.3d at 726. The court noted that the grievance system "requires only that a grievance be submitted on [a particular form], which does not require identification of the persons responsible for the challenged conduct." *Id.*

As in *Moore*, the WVDOC grievance procedures provide no guidelines relating to the level of specificity required in prisoner grievances and do not specifically require that individual defendants be named. Thus, Plaintiff's Amended Complaint cannot be dismissed for failing to exhaust requirements which do not exist. Defendants' argument, again, has no merit.

Accordingly, Defendants' motion is **DENIED** insofar as it seeks to dismiss Plaintiff's complaint for failure to exhaust administrative remedies.

*C. Claims Against All Defendants in Their Official Capacities*

Defendants argue Plaintiff's claims against all named Defendants in their official capacities should be dismissed because such claims are barred under the Eleventh Amendment. (ECF No. 27 at 8.) In response, Plaintiff "affirmatively states" that Defendants are being sued only in their individual capacities. (ECF No. 30 at 7.) Thus, to the extent the Amended Complaint goes further, all claims against Defendants in their official capacities are **DISMISSED**.

*D. Claims Against Defendants A. Hill and R. Hill*

Throughout their Memorandum in Support, Defendants repeatedly claim Plaintiff failed to allege factual allegations that demonstrate any of the named Defendants engaged in the conduct at issue. (*See* ECF No. 27 at 9, 12.) These statements are easily refuted by the plain language of the Amended Complaint with relation to all Defendants but A. Hill and R. Hill. Specifically, Plaintiff alleged R. Hill engaged in an argument with another inmate during the surprise cell search, which led to the disturbance that required all inmates to be escorted from the pod. (ECF No. 32 at 3 ¶ 12–13.) Plaintiff further alleges that an unspecified Defendant Hill was told by both Plaintiff and another inmate that the restraints were painfully tight, and the unspecified Defendant Hill subsequently refused to loosen or remove the restraints. (*Id.* at 4, ¶ 15.) These are the only allegations relating to either Defendant Hill contained within the Amended Complaint. While this allegation is unclear, the Court **DECLINES** to dismiss Defendants A. Hill and R. Hill under the current Motion to Dismiss. However, the Court **ORDERS** Plaintiff to file a document specifying which Defendant Hill he is referring to in Paragraph 15 and dismiss whichever Defendant Hill is not named within the Amended Complaint. (*See* ECF No. 32 at 4, ¶ 15.)

*E. Qualified Immunity*

Defendants argue they cannot be liable under Count I for deliberate indifference or Count II for excessive force because they are immune from liability under the doctrine of qualified immunity.[3] (ECF No. 27 at 10.) Specifically, Defendants contend they are entitled to qualified

---

[3] Defendants argue, under a separate section of their Memorandum in Support, that the Amended Complaint fails to state a claim for which relief can be granted because Plaintiff's factual assertions "indicate discretionary actions of government officials entitling them to qualified immunity . . . ." (ECF No. 27 at 10.) This argument is duplicative. An argument for failure to state a claim is based on the pleading standards established in *Twombly* and *Iqbal* and challenges the sufficiency of the facts alleged. However, Defendants' argument here is confusing and appears to be based on their claim that qualified immunity applies thus preventing liability under the facts alleged. Because

immunity for the following reasons: (1) Plaintiff relies upon alleged violations of internal policies which does not amount to the depravation of a clearly established right and (2) the use of restraints in this case is not a violation of a clearly established right.

"The doctrine of qualified immunity shields government officials from liability for civil damages when their conduct does not violate clearly established constitutional or other rights that a reasonable officer would have known." *Sims v. Labowitz*, 885 F.3d 254, 260 (4th Cir. 2018). The government official asserting a qualified immunity defense bears the burden of proof and persuasion. *Wilson v. Kittoe*, 337 F.3d 392, 397 (4th Cir. 2003).

To determine if an officer is entitled to qualified immunity, the Supreme Court mandated a two-part inquiry. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). First, as a threshold question, the court must ask: "whether the facts, taken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a federal right." *Tolan v. Cotton*, 572 U.S. 650, 655–56 (2014) (internal quotation marks omitted) (quoting *Saucier*, 533 U.S. at 201). The second prong asks "whether the right in question was 'clearly established' at the time of the violation." *Tolan*, 572 U.S. at 656 (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). "We do not require a case directly on point in order to conclude that the law was clearly established so long as existing precedent [has] placed the statutory or constitutional question beyond debate." *Smith v. Ray*, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted) (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011)).

1. Eighth Amendment Violations

Plaintiff asserts claims for deliberate indifference and excessive force in violation of the

---

Defendants' argument is intertwined with their claim of qualified immunity, the Court does not address it separately.

Eighth Amendment's Cruel and Unusual Punishments Clause. In the prison context, the Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (internal quotation omitted). Claims under the Eighth Amendment have two components: (1) a subjective component of whether the official "act[ed] with a sufficiently culpable state of mind[,]" and (2) an objective component of whether "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)) (alterations in original). The showing required for each of these components varies "according to the nature of the alleged constitutional violation." *Id.* at 8; *Wilson*, 501 U.S. at 302 (stating "wantonness does not have a fixed meaning but must be determined with due regard for differences in the kind of conduct against which an Eighth Amendment objection is lodged") (citations omitted).

In the present case, Plaintiff's allegations are based on Defendants' use of restraints. The Court notes that although Plaintiff's Amended Complaint includes separate counts alleging deliberate indifference and excessive force, these counts are based on the same factual allegations. The parties do not draw this distinction, and Defendants do not differentiate between these two separate claims in their challenge. While this complicates the Court's analysis under the current motion, the Court declines to organize Plaintiff's claims and determine the appropriate Eighth Amendment doctrine at this time. *See Thompson v. Barker*, No. 2:18-CV-01318, 2020 WL 249446, at *3 (S.D. W. Va. Jan. 15, 2020); *Zimmerman v. Schaeffer*, 654 F.Supp.2d 226 at 248–49 (M.D. Pa. 2009) (distinguishing cases where the use of mechanical restraints fell under a conditions of confinement or excessive force analysis). Discovery is still ongoing, which may

uncover additional factual allegations that further shape these claims.

As their first argument, Defendants claim their alleged violation of WVDOC Policy Directive 307 does not equate to a violation of a federal constitutional right. (ECF No. 27 at 11.) Defendants are correct. "It is, in fact, settled law that a violation of departmental policy does not equate with constitutional unreasonableness." *Abney v. Coe*, 493 F.3d 412, 419 (4th Cir. 2007) (citing *Davis v. Scherer*, 468 U.S. 183, 193–96 (1984)). Further, "[o]fficials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision." *Davis*, 468 U.S. at 194. "A plaintiff who seeks damages for violation of constitutional or statutory rights may overcome the defendant official's qualified immunity only by showing that those rights were clearly established at the time of the conduct at issue." *Id.* at 197. Thus, Defendants' violation of WVDOC policy is irrelevant to the Court's determination of whether Defendants' conduct was constitutional. However, despite Defendants' argument to the contrary, Plaintiff's reliance on this policy is not grounds for dismissal on its own. The Court must determine if Plaintiff has overcome Defendants' qualified immunity using the standards set forth below.

Count I of the Amended Complaint asserts a claim for deliberate indifference. The Eighth Amendment "does not mandate comfortable prisons, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson*, 501 U.S. at 298. "Because evolving precepts of humanity and personal dignity animate the Eighth Amendment, [courts must be] guided by contemporary standards of decency in determining whether an alleged harm is sufficiently deleterious to satisfy the objective component of an Eighth Amendment claim." *Shakka v. Smith*, 71 F.3d 162, 166 (4th

17

Cir. 1995). The court must consider "[t]he length of confinement under the challenged conditions" as a factor in determining whether plaintiff has presented evidence of sufficient injury. *Holley v. Johnson*, No. 7:08CV00629, 2010 WL 2640328, *14 (W.D. Va. June 30, 2010) (citing *Hope*, 536 U.S. 730 (finding that handcuffing inmate to hitching post in hot sun for seven hours in awkward position with limited access to bathroom facilities and drinking water satisfied objective element of Eighth Amendment conditions claim).

To state a claim for deliberate indifference, a plaintiff must establish that an official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837(1994); *see also White by White v. Chambliss*, 112 F.3d 731, 737 (4th Cir. 1997) ("[D]eliberate indifference, at a minimum, implies that defendants were plainly placed on notice of a danger and chose to ignore the danger notwithstanding the notice."). Knowledge of a substantial risk of danger may be inferred "from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842–43; *see also Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) ("[A]n injury might be so obvious that the factfinder could conclude that the [prison official] did know of it because he could not have failed to know of it.").

Count II of the Amended Complaint states a claim for excessive force. It is well established that "the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (internal quotations, alterations, and citation omitted). The core inquiry in an excessive force case is "not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-

faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm" and was "nontrivial." *Wilkins v. Gaddy*, 559 U.S. 34, 37, 39 (2010) (emphasis added) (quotations and citation omitted).

To establish the objective component of an excessive force claim, the plaintiff must show that the official's actions were "objectively harmful enough" to offend "contemporary standards of decency." *Id.* at 8. This objective component "can be met by the pain itself, even if an inmate has no enduring injury. *Williams v. Benjamin*, 77 F.3d 756, 762 (4th Cir. 1996) (internal quotation omitted). However, "[t]he Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9–10. In other words, this inquiry "focuses not on the severity of any injuries inflicted, but rather on 'the nature of the force,' which must be 'nontrivial.'" *Tedder v. Johnson*, 527 F. App'x 269, 272 (4th Cir. 2013) (quoting *Wilkins v. Gaddy*, 559 U.S. 34 (2010)). Under the subjective component, the requisite state of mind is "wantonness in the infliction of pain." *Iko*, 535 F.3d at 239 (quoting *Whitley*, 475 U.S. at 322). Factors to consider in making this determination include "the need for application of force, the relationship between the need and the amount of force that was used, the threat reasonably perceived by the responsible official, and any efforts made to temper the severity of a forceful response." *Hudson*, 503 U.S. at 7 (quoting *Whitley*, 475 U.S. at 321).

Courts within the Fourth Circuit have held that the use of "ambulatory restraints, as a control mechanism, properly applied and maintained for even a lengthy period, are 'not a use of force that offends contemporary standards of decency so as to satisfy the objective component of

19

an excessive force claim.'" *Holley*, 2010 WL 2640328, at *14 n.2. However, both the Supreme Court and other courts within this Circuit have repeatedly held that the use of restraints can be unconstitutional if correctional officers do not meet certain minimum standards. *See Hope*, 536 U.S. 730 (finding that handcuffing inmate to hitching post in hot sun for seven hours in awkward position with limited access to bathroom facilities and drinking water satisfied objective element of Eighth Amendment conditions claim; *Blount v. Miller*, No. 7:14CV00007, 2015 WL 1505772, *5 (W.D. Va. Mar. 31, 2015) (finding that improperly applied ambulatory restraints, leaving inmate in awkward and painful positions, posed significant risk of serious harm and refusal of correctional and medical staff to take corrective action was sufficient to constitute deliberate indifference under the Eighth Amendment); *Chaplin v. Maas*, No. 5:12CV30028, 2013 WL 1249146 (W.D. Va. Mar. 26, 2013) (finding that either using excessive force in the application of shackles or being indifferent to their tightness after a prisoner complains that he or she is experiencing severe pain could be a violation of an inmate's constitutional rights); *see also Williams*, 77 F.3d at 763-65 (noting that after restraints were imposed and disturbance ended, "unnecessary infliction of continued pain" and restraints can state a constitutional violation)*; Davis v. Lester*, 156 F. Supp.2d 588, 594 (W.D. Va. 2001)("[A]bsent detailed evidence concerning other disciplinary measures attempted first and the inmate's continued misbehavior while in the restraints" prolonged use of restraints was "an extreme response" lacking intent "to serve any legitimate security or safety response."). Thus, based on established precedent, correctional officers were arguably put on sufficient notice that the use of ambulatory restraints could be found to be in violation of the Eighth Amendment.

In this case, Plaintiff alleges that each Defendant acted with deliberate indifference when

they placed, caused, or allowed Plaintiff to be left in handcuffs that were excessively tight for an excessive period of time, despite that they were "personally and repeatedly told or heard that the cuffs were too tight" and "causing numbness in [his] hands." (ECF No. 32 at 5, ¶¶ 22-23.) Additionally, Plaintiff claims the temperature outside was approximately 40 degrees and he was not clothed properly. (*Id.* at 4, ¶ 17.) Plaintiff was also taunted by the unidentified SRT members about the temperature and the pain he was experiencing. (*Id.* at 4–5, ¶ 18.) As a result of the restraints, Plaintiff suffered visible injuries as well as numbness and pain that persists to this day. (*Id.* ¶ 19.) Further, when reviewing a case based on identical facts, another court within this district found that the plaintiff had alleged facts sufficient to support an Eighth Amendment claim at the motion to dismiss stage. *See Cantrell v. Frame*, No. 2:18-CV-01106, 2019 WL 1234335, at *3 (S.D. W. Va. Mar. 18, 2019) ("The court finds it significant that . . . he was exposed to forty-degree weather for over two hours while clothed only in shorts and a T-shirt, his restraints were not "double-locked" and thus continued to tighten painfully throughout the two hours he was restrained, that he repeatedly complained to the officers that the handcuffs were too tight and not double-locked, and that as a result of the prolonged tightness he has suffered numbness and lost range of motion of his right hand, persisting pain and lack of natural motion in both shoulders, and permanent scars on both ankles." (internal citations omitted)). Accordingly, based on the facts contained within the Amended Complaint, Defendants' conduct could be found to have violated Plaintiff's clearly established right to be free from cruel and unusual punishment.

Further, the Fourth Circuit allows dismissals under 12(b)(6) based on affirmative defenses only if the defense is clear on the face of the complaint. *See, e.g.*, *In re Willis Towers Watson plc Proxy Litig.*, 937 F.3d 297 (4th Cir. 2019) ("In general, district courts should not resolve

affirmative defenses on a motion to dismiss unless all facts necessary to the defense clearly appear on the face of the complaint." (internal citations omitted)); *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013) ("Although a motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein, dismissal nevertheless is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense." (internal citations omitted)).

Additionally, when discussing qualified immunity, the Fourth Circuit has explicitly stated that given the plausibility pleading standard applicable to the plaintiff's claims at the motion to dismiss stage, a defendant presenting a qualified immunity defense at this stage faces a formidable hurdle. *Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379, 396 (4th Cir. 2014). The *Owens* Court explained that, due to the low plausibility burden, the plaintiff's complaint will not be dismissed as long as he provides sufficient detail about his claim to show that he has a more-than-conceivable chance of success on the merits. *Id.*; *see also Rowley v. McMillan*, 502 F.2d 1326, 1335 (4th Cir. 1974) (reasoning that a claim of qualified immunity was premature at the motion to dismiss stage because its application depended upon a determination of all of the circumstances as they reasonably appeared at the time of the action, which had not yet been fully developed).

Thus, given that Plaintiff has stated a plausible claim on the face of the Amended Complaint, Defendants' are not entitled to qualified immunity at this stage of the proceeding. Discovery will assist in determining whether Plaintiff's claims violated a clearly established Eighth Amendment right. Defendants' claim of qualified immunity is **DENIED** at this stage.

*F. Bystander Liability*

Finally, Defendants argue Plaintiff has failed to identify any named Defendant who had knowledge or was aware that Plaintiff's restraints were causing injury and has asserted only conclusory allegations to support his bystander liability claim. Defendants also argue, for the first time in reply, they are entitled to qualified immunity "because Defendants engaged in discretionary conduct and did not violate any clearly established statutory or constitutional right of Plaintiff." (ECF No. 31 at 11.) "The concept of bystander liability is premised on a law officer's duty to uphold the law and protect the public from illegal acts, regardless of who commits them." *Randall v. Prince George's Cty., Md.*, 302 F.3d 188, 203 (4th Cir. 2002). "[A]n officer may be liable under § 1983, on a theory of bystander liability, if he: (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Id*. at 204 (internal footnote omitted). The Fourth Circuit has been clear that, at the pleading stage, plaintiffs are "not required to use any precise or magical words in their pleading" to state a bystander liability claim." *Stevenson v. City of Seat Pleasant*, 743 F.3d 411, 418 (4th Cir. 2014). In *Stevenson*, the Court held that the plaintiff's complaint adequately alleged bystander theory of liability for excessive force claim by stating that officer "allowed" other officers to subject plaintiff to "unreasonable seizure." *Id.* at 419 ("[i]t requires no legal gymnastics or finagling" to read the plaintiffs' complaint as alleging a bystander liability claim").

Based on language contained within the Amended Complaint, Plaintiff has demonstrated that all Defendants either knew of the allegedly excessive force or had the opportunity to prevent it, as required to establish a bystander liability claim. (*See* ECF No. 31 at 4, ¶¶ 14–15.) However, the reading of a complaint should not be the equivalent of a legal Rorschach test; a plaintiff's

claims should be plainly visible from a simple reading of the complaint. Despite this pleading failure, Plaintiff has alleged that other inmates as well as Plaintiff himself advised Defendants of the severity of the tightness of the restraints and further alleges certain other Defendants were officers in charge who denied the removal or loosening of the restraints. At the motion to dismiss stage, this is enough to support Plaintiff's claim. Thus, Defendants' Motion to Dismiss is **DENIED** as to Plaintiff's claim for bystander liability. Further, because the Court declines to grant qualified immunity for Plaintiff's deliberate indifference or excessive force claim, the Court also **DECLINES** to grant qualified immunity on any derivative bystander liability claim.

## *IV.* *CONCLUSION*

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss. (ECF No. 26.) For clarity, the Court summarizes its holding as follows: to the extent the Amended Complaint brings claims against Defendants in their official capacities, those claims are **DISMISSED**. All other claims remain. Further, the Court **ORDERS** Plaintiff to clarify which Defendant Hill is referred to in Paragraph 15 of the Amended Complaint. (*See* Section III.D.) This document shall be filed forthwith.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:     March 23, 2020

THOMAS E. JOHNSTON, CHIEF JUDGE

24